939 A.2d 732

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Alan Edgar HARRIS.

Misc. Docket AG No. 50, Sept. Term, 2006.

Court of Appeals of Maryland.

Jan. 16, 2008.

144

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Benjamin Lipsitz, Baltimore, for respondent.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (retired, specially assigned) and DALE R. CATHELL (retired, specially assigned), JJ.

BATTAGLIA, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition for Disciplinary or Remedial Action against Respondent, Alan Edgar Harris, on November 1, 2006. Bar Counsel alleged that Respondent violated Maryland Rules of Professional Conduct ("MRPC"), 8.1(a) (Bar Admission and Disciplinary Matters),[2] and 8.4(a), (c) and (d) (Misconduct).[3]

---

1. Maryland Rule 16–751(a) provides:
 (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of [the Attorney Grievance] Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 8.1(a) states:
 An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not: (a) knowingly make a false statement of material fact. . . .

3. Rule 8.4 provides in relevant part:
 It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

 \* \* \*

 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

In accordance with Maryland Rules 16–752(a) and 16–757(c),[4] we referred the petition to Judge Dana M. Levitz of the Circuit Court for Baltimore County for an evidentiary hearing and to make findings of fact and conclusions of law. Judge Levitz held a hearing on June 27, 2007, and issued Findings of Fact and Conclusions of Law on August 7, 2007, in which he concluded by clear and convincing evidence that Respondent had violated Rule 8.4(c) by executing an authorization to transfer the ownership of a Washington Mutual Investors Fund account owned by Respondent and his former wife as tenants by the entireties prior to their divorce, based upon Respondent's representation that he was entitled to sole possession. Judge Levitz did not conclude that there were violations of Rules 8.1(a) or 8.4(c) with respect to Respondent's explanation to Bar Counsel that he titled the Fund in his own name to hold the account in a "self imposed trust," nor of Rule 8.4(a) or (d).

## FINDINGS OF FACT

### I. Undisputed Facts

"Pursuant to Rule § 16–757(c), this Court finds the following facts, which are undisputed, by clear and convincing evidence:

---

(d) engage in conduct that is prejudicial to the administration of justice. . . .

4. Maryland Rule 16–752(a) states:
(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing. Maryland Rule 16–757(c) states in pertinent part:
(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.

1. Respondent Alan Edgar Harris has been a member of the Maryland Bar since 1960.[1]

---

[1] T.—hearing June 27, 2007.

---

2. Mr. Harris was suspended from the practice of law in 2002, and has not been reinstated.

3. Mr. Harris was married to Frances M. Harris until they were divorced sometime in 1985.

4. The divorce was filed in Baltimore City and as a result Ms. Harris received the marital home, located at 1 Charles Ridge Garth in Towson; she also retained a mutual fund, unbeknownst to Mr. Harris, named "Washington Mutual Investors Fund–Class A" ("the Fund").

5. The Fund was owned by both Mr. and Ms. Harris as tenants by the entireties until, as a result of the divorce, their respective interests were automatically changed to tenancies in common by operation of law.

6. Carroll Klingelhofer, III, esq., was retained by Ms. Harris in 1988 to prepare a will for herself.

7. Ms. Harris resided at 1 Charles Ridge Garth until her death on June 3, 2005; her will was found soon after her death.

8. In the subsequent probate proceeding, Mr. Klingelhofer represented the estate and Meryk Jankowski was named personal representative.

9. Mr. Harris had been given the original will by the person who found it, and he in turn gave the will to Mr. Klingelhofer.

10. During the course of investigating the nature and extent of Ms. Harris' assets, Mr. Klingelhofer discovered a quarterly statement from the Fund, which listed the owners of the Fund, Mr. and Ms. Harris, as tenants by the entireties, and had a value of approximately $97,514.00.

11. Mr. Klingelhofer sent Mr. Harris a letter dated July 21, 2005, which informed Mr. Harris that the Fund was, by

operation of law, now held by Mr. Harris and Ms. Harris as tenants in common (Exhibit # 1).

12. Mr. Harris, in the middle of August, 2005, executed a transfer authorization/stock assignment that had the effect of changing the title of the Fund from being held by Alan E. Harris and Frances Harris as tenants by the entireties to sole ownership in the name of Alan E. Harris (Exhibit # 4).

13. On or about August 16, 2005, Mr. Klingelhofer discovered that Mr. Harris had initiated the transfer that gave Mr. Harris sole ownership of the Fund.

14. On or about September 28, 2005, at Mr. Klingelhofer's suggestion, American Funds froze the account that held the Fund, pending a determination of ownership.

15. In March of 2007, the estate of Ms. Harris received one half of the Fund from Mr. Harris.

16. From the time Mr. Harris indirectly transferred ownership of the Fund to himself, in August of 2005 to March of 2007, Mr. Harris never depleted the Fund and any dividends earned were reinvested into the Fund.

17. Mr. Harris cited concern regarding income taxes assessed against the Fund as the reason for making the transfer. He also expressed the view that he did not trust Mr. Klingelhofer and was suspicious of his motivation for asking questions about this asset and his divorce.

18. Mr. Harris misled Mr. Klingelhofer by saying that he would check the ownership status of the Fund by reviewing divorce papers from 1985; instead of reviewing divorce files, Mr. Harris used this opportunity to cause the transfer of the Fund to himself.

## II. Disputed Facts

Although the following facts are disputed, this Court has heard evidence from both parties and finds these facts, pursuant to Rule § 16–757(c), by clear and convincing evidence:

19. Mr. Harris knew, when he took possession of the entire Fund, that he did not have the right to transfer the Fund to

himself. Mr. Harris testified that when he received the letter dated July 21, 2005, he did not know what tenancy in common was. He claims that when he transferred the Fund into his name in the middle of August, 2005, he thought that he was entitled to ownership of the Fund as a result of the death of Ms. Harris. This Court finds Mr. Harris' testimony regarding his lack of legal knowledge to be unconvincing. Mr. Harris knew that the Fund's ownership had been converted to tenancy in common. In the letter Mr. Klingelhofer implied that Mr. Harris does not have the sole proprietary right to the Fund if Mr. Harris and Ms. Harris owned the Fund as tenants in common (*See* exhibit # 1). Having been an attorney for more than 40 years, it is more than likely that Mr. Harris had a basic knowledge of property law when he transferred the Fund to himself. A first year law student is taught that tenants in common do not have the right of survivorship; when one tenant in common dies, her interest in the property goes to her estate, not to the other tenant in common. Mr. Harris knew what his interest in the Fund was, and if he had forgotten, the July 21 letter put him on notice that he did not own 100% of the Fund.

20. Mr. Harris had no reasonable basis for the belief that Mr. Klingelhofer was trying to defraud him with regard to the Fund. Mr. Harris, in a rambling quasi-monologue, testified that he believed that Mr. Klingelhofer was trying to hide the Fund from him. At the hearing Mr. Harris contended that this alleged fraud was the reason that he transferred the Fund to himself. Mr. Harris testified that he believed that he would have waived a claim for fraud against the estate if he did not take possession of the Fund. Mr. Harris argued that he was simply putting the Fund in a "trust" pending future litigation against the estate. This Court finds these contentions to be unconvincing. Mr. Harris, who practiced law for 40 years, could not have believed that a claim for fraud against Ms. Harris' estate would be waived if he did not take full possession of the Fund. Even if Mr. Harris did actually believe in this Ma-

chiavellian rule of waiver, no reasonable attorney would believe it. Thus, Mr. Harris' fear of waiving a fraud claim is not a reasonable excuse for transferring the Fund to himself when he knew he was only entitled to half of its value.

21. Mr. Harris did not intend to defraud the estate of Ms. Harris when he transferred the Fund to himself. The Attorney Grievance Commission alleges that Mr. Harris sought to keep and use the value of the Fund for himself when he took possession of 100% of the Fund. The Commission did not present evidence that would support this inference, however. Mr. Harris claims that he was concerned about his own tax liability concerning the Fund. Mr. Klingelhofer, the Commission's only witness, conceded that the value of the Fund was not depleted when it was in Mr. Harris' possession. Furthermore, Mr. Klingelhofer testified that all the dividends from the Fund were reinvested during Mr. Harris' possession of the Fund. Mr. Harris' actions during the time period that he held the Fund, *i.e.* August of 2005 to March of 2007, do not suggest that he wanted to convert the money to his own use. Mr. Harris never *used* the value of the Fund at all: not as collateral, cash, or otherwise. Mr. Harris simply wanted to *control* the Fund, so that he would not be personally liable for anything the estate of Ms. Harris did, or did not do, regarding the Fund. In March of 2007, the estate of Ms. Harris received every penny that it was entitled to from the Fund. The fact that American Funds froze the account, does not help to prove that Mr. Harris had the intent to convert the Fund to his own use or otherwise defraud the Estate of Ms. Harris.

22. Mr. Klingelhofer acted ethically at all times in this matter. Mr. Harris has made many and varied allegations of fraud and misconduct against Mr. Klingelhofer. Mr. Harris never presented any support for these allegations besides his own testimony. Mr. Harris' testimony regarding Mr. Klingelhofer's motives regarding the Fund was implausible, to say the least. Mr. Klingelhofer acted as any reasonable estate attorney would when he inquired about Mr. Harris'

divorce. An attorney representing an estate in this situation has a duty to find out who is entitled to any significant financial asset owned by the decedent. Mr. Klingelhofer had a duty to discover who had what ownership interest in the Fund; asking Mr. Harris about his divorce settlement was the most logical way to achieve this end.

### CONCLUSIONS OF LAW

There is no doubt that Mr. Harris violated Rule 8.4(c) of the Maryland Rules of Professional Conduct[2] when he executed the transfer order that gave him sole ownership of the Fund. Mr. Harris knew that he was not entitled to 100% of the Fund, yet he still requested the transfer. The requested transfer was a misrepresentation of the ownership of the Fund to American Funds, whose employees did not know that the ownership of the Fund had been converted to tenancy in common by Mr. and Ms. Harris' divorce. Mr. Harris indirectly represented, by making it look like he was entitled to sole possession of the Fund, that he and Ms. Harris were still married. He allowed American Funds employees to believe that he and Ms. Harris still owned the Fund as tenants by the entireties, and so he could take full possession of the Fund when Ms. Harris died. An honest attorney would not have allowed this misconception to remain uncorrected. Mr. Harris argues that he never directly stated that he and Ms. Harris were still married when he requested the transfer. Nevertheless, any competent attorney would know that that was what was implied. Thus, Mr. Harris violated Rule 8.4(c) when he requested the August 2005 transfer of the Fund to himself.

---

[2.] Rule 8.4(c) provides: (c) [it is professional misconduct for a lawyer to] engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

---

Mr. Harris did not violate Rule 8.4(d),[3] however, by his actions regarding the Fund. Misconduct that is so extreme that it inherently harms the administration of justice is

considered prejudicial to the administration of justice. *Attorney Grievance Commission v. Link*, 380 Md. 405, 429, 844 A.2d 1197 (2004). Mr. Harris' misconduct does not rise to this standard. Mr. Harris certainly did not show good faith, and was certainly dishonest, when he caused the Fund to be transferred to himself. The type of dishonesty that was present in this case does not necessarily prejudice the administration of justice. Here, Mr. Harris was dishonest, but his conduct did not prejudice the administration of justice. While it is troubling that Mr. Harris would mislead another member of the Bar, this conduct was not while acting as an attorney. Mr. Harris' actions and omissions occurred in his capacity as the ex-husband of Ms. Harris, not as an attorney representing one of the parties. While this does not excuse his misconduct under the Maryland Rules of Professional Responsibility, it is a mitigating factor. Mr. Harris did not damage the legal process in a significant way by initiating the transfer of the Fund to himself. The estate of Ms. Harris got the value of half of the Fund in the end, just as it was entitled to.

---

3. Rule 8.4(d) provides: (d) [it is professional misconduct for a lawyer to] engage in conduct that is prejudicial to the administration of justice.

---

(emphasis in original)

### STANDARD OF REVIEW

█ In proceedings involving attorney discipline, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. Webster*, 402 Md. 448, 459, 937 A.2d 161, 167 (2007); *Attorney Grievance v. Nussbaum*, 401 Md. 612, 632, 934 A.2d 1, 12 (2007); *Attorney Grievance v. Lawson*, 401 Md. 536, 571–72, 933 A.2d 842, 863 (2007); *Attorney Grievance v. Mininsohn*, 380 Md. 536, 564, 846 A.2d 353, 369–70 (2004); *Attorney Grievance v. Awuah*, 374 Md. 505, 520, 823 A.2d 651, 660 (2003). In our

review of the record, the hearing judge's findings of fact generally will be accepted unless they are clearly erroneous. Maryland Rule 16–759(b)(2); [5] *Webster,* 402 Md. at 459–60, 937 A.2d at 167–68; *Nussbaum,* 401 Md. at 632, 934 A.2d at 12; *Lawson,* 401 Md. at 572, 933 A.2d at 863; *Attorney Grievance v. Goff,* 399 Md. 1, 28, 922 A.2d 554, 570 (2007); *Attorney Grievance v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004); *Attorney Grievance v. Potter,* 380 Md. 128, 151, 844 A.2d 367, 380–381 (2004). As to the hearing judge's conclusions of law, such as whether provisions of the MRPC were violated, our consideration is essentially *de novo.* Maryland Rule 16–759(b)(1); [6] *Webster,* 402 Md. at 460, 937 A.2d at 168; *Nussbaum,* 401 Md. at 632, 934 A.2d at 13; *Lawson,* 401 Md. at 572, 933 A.2d at 863; *Attorney Grievance v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Mininsohn,* 380 Md. at 564, 846 A.2d at 370; *Awuah,* 374 Md. at 520, 823 A.2d at 660.

## DISCUSSION

Respondent took exceptions to both the hearing judge's findings of fact and conclusions of law, each of which we shall address. Petitioner also took exception to some of the hearing judge's conclusions of law.

---

5. Maryland Rule 16–759(b)(2) provides:
 (2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
 (B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

6. Maryland Rule 16–759(b)(1) states:
 (b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

### A. *Respondent's Exceptions to Findings of Fact and Conclusions of Law*

### 1. *Exceptions to Findings of Fact*

We have reviewed the record and conclude that Judge Levitz's findings of fact are supported by clear and convincing evidence, even though Respondent takes exception to most of the judge's factual findings, each of which we will address and overrule.

> *Exception # 1*: Respondent excepts to the hearing judge's finding that he was suspended from the practice of law in 2002 and has not been reinstated.

 Respondent argues that this finding was unnecessary, as it was immaterial and irrelevant to any alleged violation of the MRPC. The issue of this finding's relevancy is dictated by Rule 16–757(c), which states that the hearing judge "shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law." It is clear that findings regarding Respondent's status as an attorney are relevant and material to any "remedial action." Respondent admitted, when he testified, that he has been suspended from the practice of law since 2002. We, therefore, conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule this exception.

> *Exception # 2*: Respondent excepts to the hearing judge's finding that the Fund was held by both Respondent and his ex-wife as tenants by the entireties until, as a result of their divorce, their respective interests were automatically changed to tenancies in common.

 Respondent argues that this finding is not supported by clear and convincing evidence because "[s]ome of the parties or witnesses below may have considered that the Fund was not held by the entireties, but as a joint asset." Regardless, the hearing judge's finding is an accurate expression of the applicable legal principle to the facts of this case. It is well settled that an asset owned as a tenancy by the entirety

between a husband and wife becomes a tenancy in common in the event of divorce. *McCally v. McCally,* 250 Md. 541, 542, 243 A.2d 538, 539 (1968); *Tucker v. Dudley,* 223 Md. 467, 469, 164 A.2d 891, 893 (1960); *Keen v. Keen,* 191 Md. 31, 37, 60 A.2d 200, 204 (1948). We, therefore, conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule this exception.

> *Exception # 3:* Respondent excepts to the finding that "During the course of investigating the nature and extent of Ms. Harris' assets, Mr. Klingelhofer discovered a quarterly statement from the Fund, which listed the owners of the Fund, Mr. and Ms. Harris, as tenants by the entireties and had a value of approximately $97,514.00."

Respondent argues that Mr. Klingelhofer did not "discover" the Fund's quarterly statement because Mr. Jankowski delivered the statement to him, and that Mr. Klingelhofer had knowledge of the Fund prior to Ms. Harris' death. Respondent bases his argument on his belief that both Ms. Harris and Mr. Klingelhofer had planned to prevent Respondent from acquiring any part of the Fund.

Consistent with the standard of review for factual findings in attorney discipline cases, we have iterated that the judge "may elect to pick and choose which evidence to rely upon." *Attorney Grievance v. Harris,* 371 Md. 510, 543, 810 A.2d 457, 477 (2002); *Attorney Grievance v. Garfield,* 369 Md. 85, 99, 797 A.2d 757, 765 (2002); *Attorney Grievance v. Hines,* 366 Md. 277, 291, 783 A.2d 656, 664 (2001); *Attorney Grievance v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999). With respect to this exception, Judge Levitz did just that. Although Respondent testified to his belief that Mr. Klingelhofer had knowledge of the Fund before his ex-wife's death, Mr. Klingelhofer testified to the contrary, stating that he had "absolutely no knowledge whatsoever about the existence of this particular account in any way, shape or form until Mr. Jankowski handed me that piece of paper mid to late June of 2005."

Moreover, if Respondent is challenging the hearing judge's choice of the word "discovered," his argument is misplaced. Merriam–Webster's Collegiate Dictionary 357 (11th ed.2005) defines discover as "to obtain sight or knowledge of for the first time." From Mr. Klingelhofer's testimony, it is evident that he found out about the Fund's quarterly statement for the first time during his investigation of Ms. Harris' assets after her death. We have reviewed the record and conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule this exception.

*Exception # 4*: Respondent excepts to the hearing judge's findings in paragraphs 11, 12, 13 and 14 "to the extent, if at all, that the content of those paragraphs, collectively or separately, had any binding legal effect on the manner in which the Fund was registered with American Funds, or were held, or were owned."

*Exception # 5*: Respondent excepts to the finding in paragraph 16 that he "indirectly transferred ownership of the Fund to himself" when he submitted the transfer authorization form to American Funds.

*Exception # 9*: Respondent excepts to the finding in paragraph 21 that he "transferred the Fund to himself" when he submitted the transfer authorization form to American Funds.

 In order to clarify Respondent's exceptions, it is necessary to reconcile what was actually said in the findings of fact. In paragraph 11, Judge Levitz found that Mr. Klingelhofer sent Respondent a letter dated July 21, 2005, which informed him that the Fund was, by operation of law, held by him and his ex-wife as tenants in common. In paragraph 12, Judge Levitz found that Respondent, in the middle of August 2005, executed a transfer authorization that had the effect of changing the title of the Fund from being held by Respondent and his ex-wife to sole ownership in the name of Respondent. In paragraph 13, Judge Levitz found that on or about August 16, 2005, Mr. Klingelhofer discovered that Respondent had initiated the transfer that gave him sole ownership of the Fund. In

paragraph 14, Judge Levitz found that on or about September 28, 2005, at Mr. Klingelhofer's suggestion, American Funds froze the account that held the Fund pending a determination of ownership. In paragraph 16, Judge Levitz found that from the time Respondent transferred ownership of the Fund to himself, until March 2007 when the Estate of Ms. Harris received its share of the Fund, Respondent did not deplete the account and any dividends earned were reinvested into the Fund. In paragraph 21, Judge Levitz found that Respondent did not intend to defraud the Estate of Ms. Harris when he transferred the Fund to himself.

In Respondent's exceptions, he argues that these factual findings were incorrect because "he did not transfer the Fund to himself, but only applied for its transfer, which was under the control of—and was accomplished by—American Funds . . . ." Therefore, Respondent asserts, his actions did not have any binding legal effect on the manner in which the Fund was titled. However, the Fund was owned by both Respondent and his ex-wife as tenants by the entireties until, as a result of their divorce, their respective interests were automatically changed to tenancies in common. Then, in August 2005, Respondent submitted and executed a transfer authorization form that prompted his gaining sole ownership of the Fund. The intent of Respondent's execution and submission of the authorization to American Funds was to induce American Funds to transfer the Fund to him; Respondent would have us "parse" the language of the trial court, which we decline to do. We, therefore, conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule these exceptions.

*Exception # 6:* Respondent excepts to the finding that "Mr. Harris misled Mr. Klingelhofer that he would check the ownership of the Fund by reviewing divorce papers from 1985; instead of reviewing divorce files, Mr. Harris used the opportunity to cause the transfer of the Fund to himself."

██ Respondent argues that he did not mislead Mr. Klingelhofer because he only told him that he would locate, review and make copies of the divorce file, and that he did not use the opportunity to cause the transfer of the Fund to himself. However, Mr. Klingelhofer's unrefuted testimony was that when Respondent contacted him in July 2005, Respondent told him that he would find the divorce file and check to determine whether the Fund was referenced in the settlement agreement or other stipulation. Instead of reviewing the agreement and getting in touch with Mr. Klingelhofer, Respondent contacted American Funds and induced the transfer of the Fund to himself. The hearing judge's factual findings are supported by clear and convincing evidence, and we overrule this exception.

> *Exception # 7*: Respondent excepts to the hearing judge's finding that Respondent knew what his interest in the Fund was, and that if he had forgotten, the July 21, 2005, letter put him on notice that he did not own 100% of the Fund.

██ Respondent argues that these findings are not supported by clear and convincing evidence because he believed the account was a "joint account." Nevertheless, Respondent testified that at the relevant time, i.e. when he executed the transfer in August 2005, he had been told that the account was held by himself and Ms. Harris as tenants in common after their divorce. After being notified of the Fund, Respondent testified that he sought the services of his broker, telling him that "I have this American Funds. And I'd like it to be transferred over to my sole account." Respondent testified, however, that his broker told him he could not do that "because it's a tenancy in common. And I said, tenancy in common? At that time I was told by the broker it was a tenancy in common." Therefore, Respondent "admit[ted] it was tenancy in common." We conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule this exception.

*Exception # 8:* Respondent excepts to the finding that he had no reasonable basis for the belief that Mr. Klingelhofer was trying to defraud him with regard to the Fund.

*Exception # 10:* Respondent excepts to the finding Mr. Klingelhofer acted ethically and reasonably in this matter.

■ Respondent argues that the record supports his contention that Mr. Klingelhofer had knowledge of the Fund before Ms. Harris' death and was involved in some sort of fraud to prevent Respondent from receiving his portion of the Fund. Mr. Klingelhofer, however, testified that he did not have any knowledge of the Fund until Mr. Jankowski brought it to his attention in June 2005 after Ms. Harris had died. There is no evidence, other than Respondent's own unsubstantiated allegations, that Mr. Klingelhofer had information about the Fund's existence prior to his ex-wife's death. Moreover, the record indicates that Mr. Klingelhofer acted as any reasonable attorney would when tasked with the administration of an estate. After being informed of Ms. Harris' death, Mr. Klingelhofer, who testified that he has practiced estate and trusts law for thirty five years, sought to determine what assets Ms. Harris owned at the time of her death. That inquiry precipitated his discussion with Respondent about his divorce from Ms. Harris and what property disposition resulted. Mr. Klingelhofer's queries of Respondent were entirely justified, logical, and reasonable. We conclude that the hearing judge's factual findings are supported by clear and convincing evidence and overrule these exceptions.

### 2. *Exception to Conclusions of Law*

■ Respondent took exception to Judge Levitz's conclusion of law that he violated Rule 8.4(c) when he executed the transfer order that gave him sole ownership of the Fund because Respondent knew that he was not entitled to 100% of the Fund, yet he still requested the transfer. We overrule this exception.

Recently, in *Attorney Grievance v. Floyd,* 400 Md. 236, 929 A.2d 61 (2007), we concluded that Floyd violated Rule 8.4(c)

when she concealed the nature of her relationship with another attorney in order to obtain a higher starting salary with the Federal Trade Commission. We determined that although Floyd did not explicitly misstate any fact, she concealed a material fact, which was dishonest and deceitful in violation of Rule 8.4(c). *See also Attorney Grievance v. Sweitzer*, 395 Md. 586, 911 A.2d 440 (2006) (attorney violated Rule 8.4(c) by attempting to transfer title of a vehicle purchased at a public auction by means of a fraudulent gift certification form); *Attorney Grievance Comm'n v. Haupt*, 285 Md. 39, 399 A.2d 1350 (1979) (per curiam) (attorney violated Disciplinary Rule 1–102 of the Code of Professional Responsibility, which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation," by failing to inform a courthouse employee that the individual accompanying him to visit with the defendant in lock-up was the defendant's fiancee, rather than his secretary).

In this case, although Respondent did not expressly make any false statement to American Funds, i.e. he never explicated that he and Ms. Harris were still married, he concealed the fact that he was no longer married to her. Accordingly, we conclude that Respondent violated Rule 8.4(c) and overrule Respondent's exception.

B. *Petitioner's Exceptions to Conclusions of Law*

Bar Counsel does not except to Judge Levitz's conclusion that Respondent did not violate Rule 8.4(a) or (d). Petitioner does except to Judge Levitz's failure to find that Rules 8.1(a) and 8.4(c) were violated by Respondent's false explanation to Bar Counsel that he titled the Fund, ostensibly held by Respondent and Ms. Harris as tenants in common, in his own name in order to hold the account in a "self imposed trust." Respondent contends, conversely, that any misconduct in violation of Rules 8.1(a) and 8.4(c) is not supported by the record because Respondent held the Fund in trust and did not remove any money from the account.

Rule 8.1 (a) states:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact. . . .

Rule 8.4, section (c) states in relevant part that

[i]t is professional misconduct for a lawyer to:

\* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

We have said that Rules 8.1(a) and 8.4(c) are violated when an attorney acts dishonestly and deceitfully by knowingly making false statements to Bar Counsel. In *Attorney Grievance v. Lee*, 393 Md. 385, 903 A.2d 360 (2006), the attorney intentionally misled the investigator for Bar Counsel by stating that the reason for the delay in a client's case was due to unavailable, and then late delivery of, transcripts. In fact, the hearing judge found that the inactivity was because of Lee's failure to review the case materials for two years and his failure to manage his case load. We concluded that respondent violated Rules 8.1(a) and 8.4(c):

Respondent's letter to the Commission offers several possible reasons/representations for the lack of activity in the case: unavailable transcripts; the Complainant "eventually" delivering a box of transcripts (the letter is unclear as to whether the box the Complainant delivered contained the "unavailable transcripts") and case materials to Respondent that, the hearing judge found, Respondent did not review until January 2003; the voluminous nature of the case materials; and Respondent's paralegal's absence from September 2002 up to the 9 January 2003 meeting. As revealed by the hearing judge's previously sustained findings, the true reason for inactivity in the case was Respondent's failure personally to review the case materials for two years and his failure to manage his case workload in a manner that would allow for the timely research, review, evaluation, and pursuit of the matters for which he was retained-not any unavailable transcript or "voluminous" box of case

materials. Moreover, Respondent intentionally misrepresented the time period when the Complainant delivered the single box of transcripts and case materials because he acknowledged receipt of the materials from the Complainant in April 2001 in a letter dated 4 May 2001. We therefore conclude that Respondent violated MRPC 8.1(a) and 8.4(c) by misrepresenting his reasons for inactivity in Mr. Smith's case.

*Id.* at 412–13, 903 A.2d at 376–77 (footnote omitted).

In *Attorney Grievance v. Sutton,* 394 Md. 311, 906 A.2d 335 (2006), the attorney failed to properly file a complaint and affidavit to foreclose the right of redemption on a property. Sutton, however, misrepresented to Bar Counsel investigators that he had filed the necessary paperwork with the court and that the delay in processing was the court's fault. We concluded that these misrepresentations violated Rules 8.1(a) and 8.4(c). *Id.* at 325, 906 A.2d at 343.

Here, Respondent told Bar Counsel that he titled the Fund in his own name to hold the account in a "self imposed trust." Respondent's February 6, 2006, letter to Bar Counsel in response to the letter advising him of the complaint, admitted as Bar Counsel's Exhibit # 5, iterated that the purpose of the transfer "was to hold the shares of the fund in my name in a self imposed trust on behalf of the Internal Revenue Service, myself and the estate of Frances M. Harris until I could be assured that the U.S. Government's taxes, penalties and interest were not going to be assessed against me." We agree with Judge Levitz that the Respondent's assertion regarding a self-imposed trust is "unconvincing," and thereby, sustain Bar Counsel's exception and conclude that Respondent violated Rules 8.1(a) and 8.4(c) when he acted dishonestly and deceitfully by knowingly misrepresenting to Bar Counsel that he titled the Fund in his own name to hold the Fund in a "self imposed trust."

### *SANCTION*

In the case *sub judice,* Respondent violated Rule 8.4(c) when he executed the transfer authorization that gave

him sole ownership of the Fund because he misrepresented to American Funds that he was entitled to sole possession of the Fund, and also violated Rules 8.1(a) and 8.4(c) when he acted dishonestly and deceitfully by knowingly misrepresenting to Bar Counsel that he titled the Fund in his own name to hold it in a "self imposed trust." Petitioner has recommended a sanction of disbarment. Respondent suggests that this disciplinary action should be dismissed and no sanction imposed, or at a minimum that a reprimand is appropriate, because he posits that "the issues involved are in substantial part attributable to acts or omissions regarding the Fund on the part of a person or persons other than him and which had consequences detrimental to him."

■■■ The appropriate sanction for a violation of the Rules of Professional Conduct generally "depends on the facts and circumstances of each case, including consideration of any mitigating factors," *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d at 693, 713 (2005), in furtherance of the purposes of attorney discipline: " 'to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession.' " *Id.*, quoting *Awuah*, 374 Md. at 526, 823 A.2d at 663. In *Sheridan*, 357 Md. at 27, 741 A.2d at 1157, we said:

> Because "an attorney's character *must remain beyond reproach*" this "Court has the duty, since attorneys are its officers, to insist upon the *maintenance* of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute. Disciplinary proceedings have been established for this purpose, not for punishment, but rather as a catharsis for the profession and a prophylactic for the public."

(emphasis in original). When imposing sanctions, we have enunciated that, " '[t]he public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed.' " *Gore*, 380 Md. at 472, 845 A.2d at 1213. Therefore, in

this case we consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Sweitzer,* 395 Md. at 598–99, 911 A.2d at 447–48.

"It is well settled that '[d]isbarment ordinarily should be the sanction for intentional dishonest conduct.'" *Webster,* 402 Md. at 473, 937 A.2d at 175; *Attorney Grievance v. Ward,* 396 Md. 203, 218, 913 A.2d 41, 50 (2006); *Attorney Grievance v. Cafferty,* 376 Md. 700, 720, 831 A.2d 1042, 1054 (2003). This is so because "[c]andor and truthfulness are two of the most important moral character traits of a lawyer." *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 449, 635 A.2d 1315, 1319 (1994). *See also Attorney Grievance v. Pennington,* 387 Md. 565, 596, 876 A.2d 642, 660 (2005) (noting the "'unparalleled importance of honesty in the practice of law'"). As we stated in *Attorney Grievance v. Blum*:

> Honesty is of paramount importance in the practice of law.
>
> "Unlike matters relating to competency, diligence, and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

373 Md. 275, 304–05, 818 A.2d 219, 237 (2003), quoting *Attorney Grievance v. Angst,* 369 Md. 404, 420, 800 A.2d 747, 757 (2002).

In determining the appropriate sanction, we often look to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. These include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Mininsohn,* 380 Md. at 575, 846 A.2d at 376, quoting Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions (1991) (amended in 1992 to include factor (k), "illegal conduct, including that involving the use of controlled substances"). In this case, factors (a), (b), (d), (f), (g) and (i) are implicated. Respondent has substantial experience in the practice of law, as he has been practicing law since 1960. Additionally, Respondent has not acknowledged the wrongful nature of his misconduct, which is of the most serious nature because it involves dishonesty. Rather, Respondent still contends that his actions were attributable to the acts or omissions of Ms. Harris and Mr. Klingelhofer.

Most imperative in this case, however, is factor (a). Respondent has an inauspicious history of prior disciplinary offenses, with five previous sanctions imposed by this Court. In 2002, *Harris,* 371 Md. at 510, 810 A.2d at 457, Respondent was indefinitely suspended for violating Rules 1.1, 1.3, 1.4, 1.5, 1.7, 1.8, 1.9, 3.2 and 8.4(a) and (d) by failing to serve all of the defendants in a case, failing to file a case within the statute of limitations, failing to keep clients reasonably informed of the status of their cases, failing to explain to a client what would occur if he was unable to effectuate service of process, failing to appear at scheduled court proceedings, charging an unreasonable fee in a case, purchasing a client's house at a foreclosure sale, as well as representing that client, who was his tenant, without obtaining written consent, and filing suit against the same client to recover unpaid rent. In 2001, *Attorney Grievance v. Harris,* 366 Md. 376, 784 A.2d 516 (2001), Respondent was suspended six months for violating Rules 1.1, 1.3, 1.4, 1.16(a), 3.2 and 8.4(d) by failing to appear at scheduled court proceedings, failing to serve a defendant in a

case, failing to withdraw from representation while he was attending to family problems, failing to keep clients reasonably informed of the status of their cases, and failing to act diligently by filing a complaint promptly. In 1999, *Attorney Grievance v. Harris*, 354 Md. 368, 731 A.2d 459 (1999), Respondent was reprimanded by consent of this Court for violating Rules 1.3 and 1.4 by failing to file suit on behalf of his client within the statute of limitations. In 1996, in an unreported disposition, Respondent was reprimanded for neglect of a client's legal matter and failure to communicate with a client. Finally, in 1987, *Attorney Grievance Comm'n v. Harris*, 310 Md. 197, 528 A.2d 895 (1987), Respondent was suspended for six months for various disciplinary violations including neglecting a legal matter, failing to represent his client zealously, and providing financial assistance to a client not advanced in connection with contemplated or pending litigation.

■ We also, however, consider mitigating factors, including:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Lawson*, 401 Md. at 585, 933 A.2d at 871; *Attorney Grievance v. Floyd*, 400 Md. 236, 258–59, 929 A.2d 61, 74 (2007); *Sweitzer*, 395 Md. at 599, 911 A.2d at 448. Respondent has presented no evidence of mitigation, nor did the hearing judge find any, other than to state that Respondent was not acting as an attorney when he engaged in the misconduct we consider here. Although we concluded in *Attorney Grievance v. Link*, 380 Md. 405, 429, 844 A.2d 1197, 1211–12 (2004), that purely private conduct is not violative of Rule 8.4(d) unless it is

"criminal or so egregious as to make the harm, or potential harm, flowing from it patent" such that the conduct is prejudicial to the administration of justice, Rule 8.4(d) is not implicated here; Rule 8.4(c) is, which requires "conduct involving dishonesty, fraud, deceit or misrepresentation," as was proven in the present case. *See Sweitzer*, 395 Md. at 596, 911 A.2d at 446 (attorney violated Rule 8.4(c) while not acting as an attorney when he attempted to transfer title of a vehicle purchased at a public auction by means of a fraudulent gift certification form).

Respondent's intentionally dishonest conduct, coupled with his extensive prior disciplinary record, compel us to state that the public only will be protected by the imposition of a sanction of disbarment.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION.*

Concurring and dissenting opinion by GREENE, J., which RAKER, J., Joins.

I concur with majority's holding that disbarment is the appropriate sanction in this case because of the hearing judge's factual findings and conclusions of law. I disagree, however, with the majority's determination that the hearing judge erred in failing to find that Rules 8.1(a) and 8.4(c) were violated on the theory that Respondent lied to Bar Counsel when Respondent said that he titled the Fund, in his own name, in order to create a "self-imposed trust." The basis for the majority's conclusion that Respondent made a false statement to Bar Counsel is the hearing judge's determination that Respondent's testimony regarding the self-imposed trust was "unconvincing." Because the hearing judge did not believe Respondent's explanation for arranging the transfer of funds to his own name is not necessarily clear and convincing evidence that Respondent either testified falsely during disci-

plinary proceedings or that he knowingly misrepresented the facts to Bar Counsel during the investigation of this case.

In Maryland, a party seeking to establish an express, resulting, or constructive trust must prove the existence of the trust by clear and convincing evidence. *Kelley v. Kelley,* 178 Md. 389, 399, 13 A.2d 529, 533 (1940). In *From the Heart Church Ministries, Inc. v. African Methodist Episcopal Church,* 370 Md. 152, 182, 803 A.2d 548, 566 (2002), we pointed out that "it is . . . [the] purpose and intention [of the settlor], rather than the use of any particular term, that determines whether a valid trust has been established." Here, Respondent failed to satisfy his burden of proof that an express trust had been created. The facts, however, are neither clear nor convincing that Respondent intended to deceive anyone or intended to misappropriate the Fund. To be sure, it would be a more accurate interpretation of the hearing judge's findings, as to the transfer of the Fund, to conclude that the judge was not persuaded that Respondent intended to create a "self-imposed trust," rather than that the judge believed Respondent lied. To say that the hearing judge was not convinced that Respondent intended to create a trust is clearly more consistent with the hearing judge's ultimate determination that "Respondent did not intend to defraud the Estate or Ms. Harris when he transferred the Fund to himself."

Further, I agree that Rules 8.1(a) and 8.4(c) are violated when an attorney acts dishonestly and deceitfully by knowingly making false statements to Bar Counsel. I disagree, however, that because the hearing judge was not persuaded that Respondent intended to create a "self-imposed" trust that Respondent knowingly made a false statement either to Bar Counsel or to the court.

Judge RAKER authorizes me to state that she joins the views expressed in this concurring and dissenting opinion.