## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND *v.* BRUCE WIDENOR HAUPT

[Misc. Docket (Subtitle BV) No. 7, September Term, 1977.]

*Decided April 24, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Bruce Widenor Haupt,* in proper person, respondent.

*James A. Frost, Assistant Bar Counsel,* for petitioner.

PER CURIAM:

The Attorney Grievance Commission, through Bar Counsel, filed a petition for disciplinary action against Bruce Widenor Haupt, alleging that he violated Disciplinary Rule 1-102 of the Code of Professional Responsibility. We referred the charge to the Circuit Court for Montgomery County to be heard by a three-judge panel in accordance with the then applicable Maryland BV Rules. The panel, after conducting an evidentiary hearing, made findings of fact, from which it concluded that Haupt had violated the disciplinary rules as charged. It recommended that he be suspended from the

practice of law for ninety days. The panel outlined the reasons for its action, as follows:

"The Petition charges the respondent with violating Disciplinary Rule 1-102 of the Code of Professional Responsibility which states:

'(A) A lawyer shall not:

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.'

In support of this charge· of misconduct, the Petition essentially makes the following allegations:

"1. On June 3, 1975, Mr. Haupt was at the Sixth District Court of Maryland in Rockville in order to represent or consult with a client, Bruce M. McMurray, who was in the custody of the Montgomery County Sheriffs' Department. After Mr. McMurray was returned to the lock-up area in the courthouse, Mr. Haupt, accompanied by a young woman, requested admittance to the cellblock in order to see his client.

"2. When asked the identity of the woman, Mr. Haupt responded that she was his 'assistant' or used words to similar effect to identify her. As a result of his response, the sheriff at the door was instructed by his superior to admit both the respondent and the woman to the lock-up area to see Mr. McMurray.

"3. Subsequently, Mr. McMurray was observed reaching through the bars of his cell, touching and caressing the woman under circumstances indicating her apparent consent.

"4. After Mr. Haupt and the woman left the lock-up area, it was learned that she was Mr. McMurray's girlfriend, not an employee or assistant, paid or unpaid, of the respondent. If not for his identification of her as an assistant, she would not have been permitted in the lock-up area, but rather would have been told to visit Mr. McMurray at another location where he was to be transferred later that day.

"The Attorney Grievance Commission presented its evidence through the written admissions of the respondent and the testimony of Jeffrey L. Ward, Chief Administrative Clerk of the District Court of Maryland for the Sixth District; Sergeant Thomas Caton of the Montgomery County Sheriffs'

Department; Deputy Sheriff Robert Stultz, and Helen Byrnes McMurray, Mr. McMurray's fiancee on June 3, 1975, who subsequently married, and then separated from, him. Much of this testimony was not disputed by the respondent who testified himself, but did not call any other witnesses.

"The undisputed evidence established the following facts. On June 3, 1975, Mr. Haupt was in the Sixth District court-house corridor with Mrs. McMurray and two other friends of his client, Bruce McMurray. The respondent and Mrs. McMurray went to the lock-up area where Mr. McMurray was being held. Sergeant Caton stopped them at the door and a short conversation ensued in which Mr. Haupt identified Mrs. McMurray as his assistant. Then, based upon what the respondent had said to the sergeant, Deputy Stultz, who was in charge of the cellblock that day, instructed Sergeant Caton to admit both people. Shortly after they were admitted, Mr. McMurray was observed touching Mrs. McMurray through the bars of his cell without any opposition from her. The touching continued for a short period of time, and then Mr. Haupt and Mrs. McMurray left the lock-up area. When Mr. Ward and Sergeant Caton spoke with the respondent in the corridor after he had left the lock-up, he maintained that he had taken Mrs. McMurray with him to assist him in consulting with his client. If Mr. Haupt had told the sergeant that Mrs. McMurray was Mr. McMurray's fiancee or girlfriend, she would not have been admitted to the lock-up.

"There was conflicting testimony, however, as to whether Mr. Haupt actually took Mrs. McMurray with him to assist with the interview. Mrs. McMurray testified that she did not consider herself to be an assistant on June 3, 1975, that she did not assist with the interview, and that she had not assisted Mr. Haupt before that date. The respondent, on the other hand, testified that he regarded her as his assistant and that he had told her before they went to the lock-up that she should encourage Mr. McMurray to tell the truth. Mr. Haupt additionally stated that friends and family members of previous clients had helped him in that manner.

"The testimony also differed concerning what was said by Mr. Haupt in order to persuade Sergeant Caton to admit Mrs.

McMurray. The sergeant testified that the respondent not only said that she was his assistant, but that he also impressed upon the sergeant that she was needed to take notes. Mr. Haupt, on the other hand, denied telling the sergeant that Mrs. McMurray would take notes.

"If Mr. Haupt did not take Mrs. McMurray with him to aid with his interview, then he clearly violated Disciplinary Rule 1-102 by representing her as his assistant. Similarly, if the respondent told Sergeant Caton that Mrs. McMurray would assist by taking notes, then that statement, too, was a clear violation of the rule. There was no evidence that Mrs. McMurray ever took any notes on June 3, 1975, that she ever intended to take any notes, or that Mr. Haupt ever intended for her to take notes.

"The Court believes, first, that Mr. Haupt probably did not take Mrs. McMurray with him as an assistant and, second, that he probably did say something to the sergeant to the effect that Mrs. McMurray would takes notes. The interview with Mr. McMurray lasted only a couple of minutes — much of which was taken up by the activities of the McMurrays —, so it seems unlikely that Mr. Haupt expected Mrs. McMurray to assist him with an interview. Moreover, he did not contradict Mrs. McMurray's testimony that in August, 1977, he went to her home to suggest that she had assisted him on June 3, 1975, by encouraging Mr. McMurray to tell the truth. As for what was said at the door to the lock-up, Sergeant Caton was a credible witness who was certain that Mr. Haupt had said something to the effect that Mrs. McMurray would take notes. The sergeant did admit, though, that he could not remember the exact words.

"We find it unnecessary, however, for our decision in this proceeding to determine whether the evidence is clear and convincing that the respondent either did not intend for Mrs. McMurray to assist him or did tell Sergeant Caton that she would assist in a secretarial capacity. Without those determinations, we still find the evidence to be sufficient to convince us that there was a violation of Disciplinary Rule 1-102. If Mr. Haupt did use Mrs. McMurray as his assistant, she was not assisting in a way that someone would usually

assist a lawyer interviewing his client. She was unpaid, she was working on only one case, and she was not helping in a secretarial capacity. With all of his experience defending clients, Mr. Haupt had to have known that she was not a typical assistant. He also must have been aware that the use of the word assistant would mislead the sheriff as to Mrs. McMurray's function. Yet, Mr. Haupt — according to his story — said nothing to correct Sergeant Caton's erroneous impression.

"Finally, and most importantly, Mr. Haupt did not tell the sergeant that Mrs. McMurray was Mr. McMurray's fiancee. The respondent failed to provide this information even though he knew that it was important to the sergeant. Mr. Haupt admitted that he knew that if he had told the sergeant, Mrs. McMurray would not have been allowed into the cellblock.

"The Court's determination of whether Mr. Haupt's conduct involved dishonesty, fraud, deceit, or misrepresentation requires a consideration of all the circumstances surrounding the conduct. The Court must consider what was not said, as well as what was said, on June 3, 1975. It is our conclusion that the evidence in this proceeding established that Mr. Haupt's identification of Mrs. McMurray as his assistant, combined with his failure to identify her as Mr. McMurray's fiancee, constituted conduct involving dishonesty, fraud, deceit, or misrepresentation. The evidence is, thus, clear and convincing that he violated Disciplinary Rule 1-102.

### "RECOMMENDATION

"Mr. Haupt's conduct in this case was not the first time that he violated Disciplinary Rule 1-102. On March 15, 1976, the Court of Appeals ordered him suspended from the practice of law in the State of Maryland for a period of thirty (30) days. Because Mr. Haupt's conduct on June 3, 1975, was not his first violation of the Disciplinary Rules, and based on the foregoing findings of fact, the panel recommends that disciplinary action be taken against the respondent. The panel specifically recommends suspension from the practice of law

for Ninety (90) Days commencing on the date of the approval of this recommendation by the Court of Appeals."

Haupt filed exceptions to the panel's findings and recommended sanction. He took issue with the assignment of Judge David L. Cahoon as a member of the panel on the ground that Judge Cahoon participated as a panel member in an earlier disciplinary action filed against him. Haupt claims that Judge Cahoon was substituted for another judge only two days prior to the hearing and he therefore had no meaningful opportunity to object to his participating in the case. Haupt also contended in his exceptions that there was no posted notice governing admission to the lock-up facility and he therefore did not violate any established rules or regulations. He finds fault with the three-judge panel's interpretation of the substance of the testimony adduced at the hearing, with the weight placed on it, and with the panel's assessment of the witnesses' credibility.

We have carefully considered Haupt's exceptions and his oral argument before us in support of them. We conclude that there was legally sufficient evidence to support the panel's findings of fact, and we adopt them. As to Judge Cahoon's participation as a member of the panel, the mere fact that he was involved in an earlier disciplinary action filed against Haupt would not require his exclusion. There was no allegation that Judge Cahoon was in any way prejudiced against Haupt, and Haupt acknowledged at oral argument that he could not properly make such an allegation.

A majority of the Court agrees with the panel's recommendation that a ninety-day suspension is the appropriate sanction to be imposed in this case in view of the fact that this is a second offense. The suspension shall begin fifteen days after the date of the filing of the opinion in this case. In addition, Haupt will be required to pay the transcript costs of $138.25 before his suspension will be terminated.

*It is so ordered.*