Submitted on the record January 27, accused disbarred March 6, 1997

In re Complaint as to the Conduct of

# MARK E. GARVEY,
*Accused.*

(OSB 94-236, 94-237, 95-30; SC S42052)

932 P2d 549

Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego, waived appearance for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary case in which a trial panel of the Disciplinary Board found the accused guilty of numerous violations of statutes and disciplinary rules and decided that disbarment is the appropriate sanction. Pursuant to ORS 9.536(3) and Rule of Procedure (BR) 10.6, this court is required to review the trial panel's decision *de novo*. The accused neither made an appearance nor filed a brief in this court. The Oregon State Bar submitted the record and waived appearance. We disbar the accused.

### FACTS

■ The accused did not respond to the formal complaint of the Oregon State Bar.[1] Therefore, the allegations of the complaint are deemed to be true. *In re Miles*, 324 Or 218, 220, 923 P2d 1219 (1996). The Bar alleges the following material facts:

### FIRST CAUSE OF COMPLAINT: *Chavez Matter*

"3.

"Prior to January 1994, Juan D. Chavez (hereinafter 'Chavez') retained the Accused to represent his interests in dissolution proceedings which included both custody and child support issues. [From] January through May 1994, the Accused neglected a legal matter entrusted to him in one or more of the following particulars:

"A.  Failing to communicate with Chavez;

"B.  Failing to take action on or necessary to attend to or resolve the pending dissolution proceedings;

"C.  Failing to respond to or communicate with opposing counsel; and

"D.  Failing to attend scheduled court appearances.

---

[1] Service of the Bar's formal complaint was by publication. It appears from the record that the accused is a fugitive from justice and cannot be located.

"4.

"In or about May 1994, Chavez terminated the Accused's services. On or about August 9, 1994, the Disciplinary Counsel's Office forwarded a copy of the complaint to the Accused and requested his response and explanation on or before August 29, 1994. The Accused did not respond.

"5.

"On or about September 6, 1994, Disciplinary Counsel's Office again requested that the Accused respond to the complaint on or before September 13, 1994. The Accused responded and provided limited explanation.

"6.

"On or about December 20, 199[4], the Chavez complaint was referred to the Local Professional Responsibility Committee (hereinafter 'LPRC') for further investigation. The Accused did not respond [to] nor otherwise cooperate with the LPRC in conducting its investigation.

"7.

"While the subject of a disciplinary investigation, the Accused failed to respond to inquiries from and cooperate with the Local Professional Responsibility Committee which is empowered to investigate or act upon the conduct of lawyers."

SECOND CAUSE OF COMPLAINT: *Garcia Matter*

"10.

"On or about May 31, 1994, Jorge Garcia (hereinafter 'Garcia') retained the Accused to represent his interests in the defense of certain criminal charges pending in the Circuit Court of the State of Oregon for the County of Yamhill. The Accused required and was paid a $470 retainer.

"11.

"During the course of the Accused's representation, the Accused neglected a legal matter entrusted to him in one or more of the following particulars:

"A.  Failing to communicate with his client;

"B.  Failing to keep scheduled appointments with his client;

"C.  Failing to keep appointments with the client's translator; and

"D.  Failing to appear at scheduled court proceedings.

"12.

"On or about October 3, 1994, the Oregon State Bar received a complaint from Garcia concerning the Accused's conduct. On or about October 5, 1994, the Disciplinary Counsel's Office forwarded a copy of the complaint to the Accused and requested his response and explanation on or before October 26, 1994. The Accused responded and provided limited explanation.

"13.

"On or about December 20, 1994, the Garcia complaint was referred to the LPRC for further investigation. In spite of the LPRC's repeated requests and communications to the Accused and the Accused's attorney, the Accused failed to respond.

"14.

"While the subject of a disciplinary investigation, the Accused failed to respond to inquiries from and cooperate with the Local Professional Responsibility Committee which is empowered to investigate or act upon the conduct of lawyers."

THIRD CAUSE OF COMPLAINT: *Criminal Convictions*

"17.

"On or about March 4, 1994, the Accused was indicted by a grand jury in the Circuit Court of the State of Oregon for the County of Yamhill and thereafter convicted of the

offenses of Escape II (ORS 162.155(1)(c)),[2] Supplying Contraband (ORS 162.185(1)(a)),[3] two (2) counts of Perjury (ORS 162.065)[4] and six (6) counts of False Swearing (ORS 162.075).[5] Copies of the indictments and the jury verdicts are attached hereto as Exhibits A and B respectively, and by this reference made a part hereof."

The indictments and jury verdicts to which the Bar's complaint refers show that the accused brought money into the Yamhill County Correctional Facility, which he gave to inmate Jeff Gordon, his client, to be used in facilitating Gordon's later escape from the jail. For those acts, the accused was charged with Escape II[6] and Supplying Contraband.

The accused testified twice before the Yamhill County grand jury that was investigating the foregoing events. On each occasion, he denied having given Gordon any money at the jail. On each occasion, he also testified that Gordon had threatened the accused and his family during a telephone call, that Gordon had said that the accused had turned Gordon in to authorities on additional burglaries (other than the ones for which Gordon was then being held in jail), and that the accused had failed to obtain a promised plea agreement from the prosecutor for Gordon. Each of those

---

[2] ORS 162.155(1)(c) provides:

"A person commits the crime of escape in the second degree if:

"* * * * *

"(c)  The person escapes from a correctional facility[.]"

[3] ORS 162.185(1)(a) provides:

"A person commits the crime of supplying contraband if:

"(a)  The person knowingly introduces any contraband into a correctional facility, juvenile facility or state hospital[.]"

[4] ORS 162.065 provides:

"(1)  A person commits the crime of perjury if the person makes a false sworn statement in regard to a material issue, knowing it to be false.

"(2)  Perjury is a Class C felony."

[5] ORS 162.075 provides:

"(1)  A person commits the crime of false swearing if the person makes a false sworn statement, knowing it to be false.

"(2)  False swearing is a Class A misdemeanor."

[6] Although Gordon, not the accused, was the person who escaped from the jail, ORS 161.155 makes a person who aids and abets another person in committing a crime "criminally liable for the conduct" of the other person.

statements was false and material, and the accused knew that. Those material, false statements formed the basis for the multiple charges of perjury and false swearing.

A jury found the accused guilty of all charges, and the jury's verdicts were accepted and entered. The accused failed to appear for sentencing, however. Warrants for his arrest have been outstanding since April 7, 1995; the accused remains a fugitive from justice. That being so, no judgments of conviction have been entered.

## ANALYSIS OF THE BAR'S CHARGES

The Bar charged the accused with a variety of statutory and rule violations. By clear and convincing evidence, we find the following violations.

### Chavez and Garcia Matters

1.    In the Chavez and Garcia matters, the Bar charges violations of Disciplinary Rule (DR) 6-101(B), which prohibits a lawyer from neglecting a legal matter entrusted to the lawyer. Because the accused failed to perform necessary services on matters entrusted to him by Chavez and Garcia, he is guilty of two violations of DR 6-101(B).

2.    The Bar also charges a violation of DR 1-103(C) in each of those causes of complaint. That disciplinary rule requires a lawyer's cooperation with disciplinary investigations. By failing to respond to or cooperate with the LPRC's repeated requests for information on the Chavez and Garcia matters, the accused violated DR 1-103(C) in each matter.

### Criminal Convictions

The Bar alleges, among other things, that various of the accused's criminal acts violate ORS 9.527(4); DR 1-102-(A)(2), (3), and (4); and DR 7-102(A)(4), (5), and (7).[7] The accused is guilty of those charges as follows:

---

[7] ORS 9.527(4) provides:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of willful deceit or misconduct in the legal profession[.]"

1. The accused's criminal acts of perjury and false swearing, and his criminal acts of aiding escape and supplying contraband in the course of representing a client, violated ORS 9.527(4), because they involve willful deceit or misconduct in the legal profession.

2. The accused's criminal acts reflect adversely on his honesty, trustworthiness, and fitness to practice law, thereby violating DR 1-102(A)(2). The absence of judgments of conviction (occasioned by the accused's flight) does not preclude a finding that the accused violated DR 1-102(A)(2). The rule requires only that the lawyer "[c]ommit a criminal act" that reflects adversely on the lawyer's honesty, trustworthiness, or fitness to practice law, not that the lawyer be convicted of a crime. *In re Morin*, 319 Or 547, 559, 878 P2d 393 (1994).

The criminal acts of the accused meet that test. The accused participated in his client's escape from jail and then repeatedly lied about it under oath.

3. DR 1-102(A)(4) prohibits a lawyer from engaging in conduct prejudicial to the administration of justice.

---

DR 1-102(A)(2), (3), and (4) provide:

"It is professional misconduct for a lawyer to:

"* * * * *

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(4) Engage in conduct that is prejudicial to the administration of justice[.]"

DR 7-102(A)(4), (5), and (7) provide:

"In the lawyer's representation of a client or in representing the lawyer's own interests, a lawyer shall not:

"* * * * *

"(4) Knowingly use perjured testimony or false evidence.

"(5) Knowingly make a false statement of law or fact.

"* * * * *

"(7) Counsel or assist the lawyer's client in conduct that the lawyer knows to be illegal or fraudulent."

The accused's repeated lies to the grand jury impeded its functioning. Additionally, the accused aided his client's escape from a correctional facility, thereby substantially harming the court procedures in that client's criminal case. In those ways, the accused's acts prejudiced the administration of justice. *See In re Haws*, 310 Or 741, 744-48, 801 P2d 818 (1990) (discussing DR 1-102(A)(4)).

4. The accused engaged in perjury and false swearing. That conduct violated DR 1-102(A)(3), which prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and DR 7-102(A)(5), which prohibits a lawyer from making a false statement of fact.

5. The accused assisted a client in illegal conduct, thereby violating the prohibition of DR 7-102(A)(7).

## SANCTION

In arriving at the appropriate sanction, we consider the American Bar Association's *Model Standards for Imposing Lawyer Sanctions* (1991 ed) (ABA Standards) and Oregon case law. *Morin*, 319 Or at 564. The ABA Standards require analysis of the accused's conduct in the light of four factors: (1) the ethical duty violated, (2) the accused's mental state, (3) actual or potential injury, and (4) the existence of aggravating or mitigating circumstances. ABA Standard 3.0.

### 1. *Duties Violated*

By engaging in the criminal conduct described, the accused violated his duty to the legal system, the public, and the profession to maintain the highest standards of honesty and integrity. ABA Standards 5.1 & 6.1. He also interfered with the orderly administration of justice. With respect to Chavez and Garcia, the accused violated an important ethical duty to his clients, the duty of diligence. ABA Standard 4.4.

### 2. *Mental State*

The ABA Standards define "intent" as "the conscious objective or purpose to accomplish a particular result." ABA Standards at 17. We find with respect to all the criminal acts involved that the accused acted with an intentional state of

mind. With respect to Chavez and Garcia, the accused acted negligently. *See* ABA Standards at 17 (defining "negligence").

### 3. *Injury*

The criminal acts of the accused caused actual and substantial injury to the public and the legal system. He aided a client in breaking the law and lied to the grand jury. By neglecting the legal matters of Chavez and Garcia, he caused potential injury to their legal interests.

### 4. *Aggravating and Mitigating Factors*

We find several aggravating factors: a dishonest motive, a pattern of misconduct, multiple offenses, and a lack of remorse. ABA Standards 9.22(b), (c), (d), and (g). The only applicable mitigating factor is the absence of a prior disciplinary record. ABA Standard 9.32(a).

Having considered the relevant factors, we now examine the sanctions suggested by the ABA Standards. The Bar correctly points to the following provisions:

"5.11 Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

"6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding."

"7.1   Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

Application of those guidelines to the conduct of the accused establishes that, under the ABA Standards, the appropriate sanction here is disbarment, even without regard to the rule violations involving the Chavez and Garcia matters.

In determining the correct sanction, we also examine the conduct of the accused in the light of our prior case law. Generally, Oregon lawyers who have engaged in serious criminal misconduct have been disbarred, whether or not they have been convicted of a crime.[8] Disbarment also has been imposed in some cases when lawyers have lied or made material misrepresentations to a court.[9] Application of the foregoing cases to the conduct of the accused likewise indicates that disbarment is the appropriate sanction.

The accused is disbarred.

---

[8] *See, e.g., In re Leonhardt,* 324 Or 498, 930 P2d 844 (1997) (forgery, tampering with public records, and official misconduct); *In re King,* 320 Or 354, 883 P2d 1291 (1994) (aggravated thefts); *In re Morin,* 319 Or 547, 878 P2d 393 (1994) (theft by deception, solicitation, and false swearing, among other offenses); *In re Taylor,* 316 Or 431, 851 P2d 1138 (1993) (felony drug and tax convictions); *In re Kirkman,* 313 Or 181, 830 P2d 206 (1992) (forgery, unsworn falsification, and bigamy); *In re Martin,* 308 Or 125, 775 P2d 842 (1989) (bribing a witness); *In re Hendricks,* 306 Or 574, 761 P2d 519 (1988) (engaging in fraudulent tax shelter scheme).

[9] *See, e.g., In re Spies,* 316 Or 530, 852 P2d 831 (1993) (disbarment for misrepresentations to the court among other violations); *In re Miller,* 310 Or 731, 801 P2d 814 (1990) (misrepresentations to the court, along with prior record, resulted in disbarment); *In re Hawkins,* 305 Or 319, 751 P2d 780 (1988) (filing false affidavit with probate court resulted in disbarment); *In re Dixson,* 305 Or 83, 750 P2d 157 (1988) (false statements to the court, among other violations, resulted in disbarment).