**In the Matter of Linda M. WAGONER.**

No. 49S00–0110–DI–472.

Supreme Court of Indiana.

May 5, 2003.

*ORDER APPROVING STATEMENT OF CIRCUMSTANCES AND CONDITIONAL AGREEMENT FOR DISCIPLINE*

Pursuant to Ind.Admission and Discipline Rule 23, Section 11, the Indiana Supreme Court Disciplinary Commission and the respondent have submitted for approval a *Statement of Circumstances and Conditional Agreement for Discipline* stipulating a proposed discipline and agreed facts as summarized below:

**Facts:** On November 30, 2000, the respondent was charged with trafficking with an inmate, a class A misdemeanor, based upon her provision of a cellular telephone to her incarcerated client, whom she represented as a federal public defender. On December 1, 2000, the respondent, no longer representing the client, pleaded guilty to the charge. Sometime in October 2000, the client's father gave the respondent $10,000 to hire a lawyer to represent the client against certain federal criminal charges pending against him. On October 24, 2000, the respondent deposited the $10,000 into a new bank account. Three days later, the respondent withdrew $5,000 in cash and gave the money to a friend of the client.

**Violations:** The respondent violated Ind.Professional Conduct Rule 8.4(b) by committing the criminal act of providing a cellular telephone to an inmate. That criminal act reflects adversely on her honesty, trustworthiness, or fitness as a lawyer in other respects. Furthermore, by withdrawing the $5,000 cash and giving it to her client's friend, when those funds were earmarked by the client's father for the provision of legal services, the respondent failed to abide by the provisions of Admis.Disc.R. 23(29)(a)(5), governing the maintenance of funds held by lawyers in trust. Specifically, that provision requires all withdrawals of funds held in trust to be made only based upon written withdrawal authorization stating the amount of the withdrawal, the purpose of the withdrawal, and the payee. Such authorization is to contain the signed approval of the attorney and made only by check payable to a

named payee, and not to "cash," or by wire transfer.

**Discipline:** Suspension from the practice of law for one hundred and eighty (180) days, effective June 7, 2003. The first ninety (90) days of the suspension shall be served as an executed suspension from the practice of law. The remaining ninety (90) days shall be stayed, and the respondent shall be conditionally reinstated to the practice of law, subject to a two (2) year period of probation. The terms of the probation shall be as specified in the *Statement of Circumstances and Conditional Agreement for Discipline.* If it is established, pursuant to Admis.Disc.R. 23(17.2), that the respondent violates any terms of her probation, the stay of the second ninety days of her suspension will be vacated and the respondent will serve the second ninety days of her suspension without automatic reinstatement thereafter. Should the respondent successfully complete the two year period of probation, she shall thereafter be automatically fully reinstated to the practice of law in this state.

The Court, having considered the submission of the parties, now APPROVES and ORDERS the agreed discipline. Costs of this proceeding are assessed against the respondent.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

SHEPARD, C.J., dissents, with opinion.

SHEPARD, Chief Justice, dissenting.

All the participants in this proceeding recognize that a lawyer trafficking with an inmate by sneaking contraband into the jail is a very weighty form of misconduct, almost shocking, one might say. It is the sort of violation that feeds the worst sort of disdain for the honesty of our profession.

Of course, there is nothing that any of us can do to alter the facts of what respondent did. We lawyers will simply have to take whatever hit her actions have imposed on public trust and confidence in the bar.

On the other hand, our fellow citizens will rightly take account how we lawyers and judges treat respondent's offense. If we treat her offense as though it is a matter of substantial gravity, they will reach a favorable conclusion about how highly we ourselves value honesty in lawyering. If we treat her offense as though it were a relatively modest one, they will reach the opposite conclusion about us.

In deciding whether to vote to approve the agreement for what is effectively a ninety-day suspension with automatic reinstatement, I have read very carefully the voluminous testimonials submitted by respondent and her lawyer. I have read many of them more than once; some of them come from people whom I know rather well and whose ethical judgments I value.

These letters speak of respondent's hard work and proficiency as an advocate and of her contributions to the organized bar. They all acknowledge that what she did in this case was abhorrent. Most of them express surprise that respondent could ever do such a thing. "I've known her for 23 years, and this was the first and only time she's exhibited such a lack of judgment," said one. "I have known Linda for twenty-three years and believe the likelihood of her ever committing a similar act is virtually zero," wrote another. "I have no reason to believe she ever did anything remotely similar to this before," said a third.

But of course, she has.

In the course of this proceeding, I have also spent time studying the last disciplin-

ary case involving Linda Wagoner. The judgment on that violation was entered just six years before the acts giving rise to this one.

Like this matter, it was resolved on the basis of a plea agreement. Unlike this matter, the facts and pleadings were kept confidential then (it would not be so under present rules), and they are still confidential. The nature of the violation is thus not widely known, apparently even to those who know the respondent relatively well.

In retrospect, I am surprised that I voted to dispose of that case on the basis of a private reprimand, for, if anything, the offense was more serious than the one before us now. But, it is our policy to encourage agreements. And moreover, keeping in mind my own human frailties, I believe in second chances.

I am not as favorable about third chances. Respondent has committed two separate acts of substantial dishonesty under circumstances in which there was time for contemplation. These violations occurred pretty close to each other in time. I think this forfeits the presumptions of honesty that we make about each other as lawyers. I would require that she prove up her character and fitness in a reinstatement hearing, rather than return her law license automatically.