73 A.3d 202

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Sherrie T. HOWELL.

**Misc. Docket AG No. 7, Sept. Term, 2010.**

Court of Appeals of Maryland.

Aug. 21, 2013.

Glenn M. Grossman, Bar Counsel (Attorney Grievance Commission of Maryland), for petitioner.

Anthony I. Butler, Esq. (of Butler & Associates, Baltimore, MD), for respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL * and MURPHY **, JJ.

BELL, C.J.

The Attorney Grievance Commission of Maryland ("the petitioner"), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a),[1] filed a Petition for Disciplinary or Remedial Action against Sherrie T. Howell, ("the respondent"). The petitioner alleged that the respondent violated Rules 8.1,[2] Bar Admission and Disciplinary Matters, and 8.4,[3]

---

\* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A. He also participated in the decision and adoption of this opinion.

\** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

**1.** Maryland Rule 16–751(a) provides:

"(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** MLRPC 8.1 provides:

"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar application or in connection with a disciplinary matter, shall not:
"(a) knowingly make a false statement of material fact; or
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions

**4** 

Misconduct, of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), as adopted by Maryland Rule 16–812.

Pursuant to Maryland Rule 16–752(a), we referred the Petition to the Honorable Videtta A. Brown of the Circuit Court for Baltimore City for the evidentiary hearing required by Maryland Rule 16–757.[4] Following that evidentiary hearing, Judge Brown issued Findings of Fact and Conclusions of Law pursuant to Maryland Rule 16–757(c) [5]:

---

> or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

3. MLRPC 8.4(a), (c) and (d) provide:
> "It is professional misconduct for a lawyer to:
> "(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
> "(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
> "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
> "(d) engage in conduct that is prejudicial to the administration of justice[.]"

4. Maryland Rule 16–757 provides, in relevant part:
> "(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence or remedial action."

5. Maryland Rule 16–757(c) states:
> "(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

*Findings of Fact and Conclusions of Law*

██ "The respondent was originally admitted to the Bar of the Court of Appeals of Maryland on December 17, 1992 and maintains an office for the practice of law at 2122 Maryland Avenue, Baltimore, Maryland 21218. The Respondent represented Dayvon Gardner (hereinafter "Mr. Gardner")[,] an inmate at Maryland Correctional Institution at Hagerstown (hereinafter "MCIH"), but did not represent him in the case that led to his incarceration at MCIH. Mr. Gardner, a member of the Bloods (gang), is currently serving a sentence for murder.

"On or about January 12, 2009, the Respondent forwarded mail to Mr. Gardner. The envelope, in which the Respondent sent the mail to Mr. Gardner, contained a return address that identified the Respondent as an "Attorney at Law." . . . A letter the Respondent wrote to Mr. Gardner, included in the envelope, was written on Respondent's letterhead. Respondent's letter and some enclosures related to her earlier representation of Mr. Gardner in connection with physical injuries he sustained while in custody in 2008. . . . Sgt. Daniel Colgan, correctional officer at MCIH, delivered what he believed to be legal mail to Mr. Gardner. Legal mail includes mail from attorneys. The envelope contained postage stamps and correspondence from Adrian Outten (hereinafter referred to as "AO"), an inmate incarcerated for a violent crime in another Maryland Institution. . . . The envelope also contained docket entries of other defendants from the Maryland Case Search database and a letter from "Tizzy," an individual previously incarcerated in a Maryland Institution. The envelope the Respondent forwarded to Mr. Gardner contained illegal contraband (postage stamps and letter from AO) pursuant to MCIH prison policy.

"Respondent admits that the letters were sent at the request of both Tizzy and AO. The Respondent also admits that she knew the letters were contraband. On February 17, 2009, the Respondent wrote to Kathleen McLaughlin, Bar Counsel,

of the Attorney Grievance Commission, . . . and addressed the allegations. She says, in part:

'With regard to the letters, I believed that they were from cousins/relatives of Mr. Gardner that was incarcerated in other facilities. In that inmates are not allowed to write to one another directly (mail from one correctional facility to another), I was asked to forward them to Mr. Gardner. . . . It was poor judgment and a bad decision on my part to do so and I recognize that. . . .'

"On April 30, 2009, Respondent was interviewed by Inspector William Ramsey of the Attorney Grievance Commission in regards to the contents of the mail sent to Mr. Gardner. The Respondent said that when she forwarded the mail to Mr. Gardner, in early January 2009, she was not representing Mr. Gardner as an attorney but was helping him with a literary enterprise.[6] Respondent admitted that she taped the letters to the back of the docket entries and regretted doing so. In the interview she did not admit to taping the stamps to the back of the docket entries. (Respondent testified that she *could have* (emphasis added) taped the stamps to the back of the docket entries). Respondent testified that she did not know that the stamps were considered contraband.

"Respondent testified that Mr. Gardner requested the docket entries and that she did not know these individuals or their cases. Additionally, Respondent testified that she only scanned the contents of the letter from AO and that she sent it because AO requested that she send it in a cover letter which was later destroyed.

"Subsequent to January 2009, Mr. Gardner continued to correspond with the Respondent. He forwarded mail to the Respondent on at least four different occasions. In his correspondence, Mr. Gardner sought information about other individuals, some of whom were incarcerated, as well as information concerning a correctional officer. The Respondent did

---

6. Mr. Gardner's literary works were utilized in 'The Birth of Peace,' an anti-gang dramatization performed by Nu World Art Ensemble (Womb Work Productions), Joint Stipulation # 1.

not receive these letters and therefore did not reply to the requests.

### "CONCLUSIONS OF LAW

"This court makes the following conclusions of law based on the above stated facts.

### "Rule 8.4 (Misconduct)

"The Petitioner alleges that the Respondent violated [MLRPC] 8.1 and 8.4(a), (b), (c) and (d) when she forwarded inmate correspondence to Mr. Gardner, who is an inmate at MCIH and taping the letters and the postage stamps to the back of legal documents, i.e. docket entries. Contraband is prohibited under MCIH prison policy and Maryland Code Annotated Criminal Laws § 9–410(c), (f) and 412.

### "LETTER AS CONTRABAND

"Respondent was aware of the prohibition of inmate-to-inmate mail from another facility. Although no criminal action yet arises out [of] this case,[7] the Respondent's actions violate Md.Code Ann.Crim. Law § 9–412.[8] Violation of this Code constitutes a criminal act punishable for up to 3 years incarceration and $1, 000.00 fine.[9] Respondent knowingly sent contraband to an inmate. Respondent sent this contraband/letter knowing that (1) Mr. Gardner is a member of the Bloods gang and convicted for murder, (2) that Mr. Gardner requested docket entries on other persons of whom she had no knowledge, and (3) that AO was [ ] convicted of violent crimes and serving a life sentence. The Respondent also failed to read the contents of the letter/contraband. Taken together,

---

**7.** Absence of criminal prosecution does not preclude violations of the MLRPC. *Atty Griev. Comm'n, v. Breschi,* 340 Md. 590, 600, 667 A.2d 659, 664 (1995).

**8.** § 9–412—Contraband—In general (a) Prohibited—A person may not: (1) deliver any contraband to a person detained or confined in a place of confinement.

**9.** Md.Code Annotated, Criminal Law § 9–412(b).

the facts show that the Respondent[']s actions were irresponsible and less than honorable. This Court finds that the Respondent's actions show that she committed a criminal act that reflects adversely on her trustworthiness, honesty and fitness as an attorney thereby violating [MLRPC] 8.4(b).

"[MLRPC] 8.4(c) deems it professional misconduct for a law[yer] to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. Respondent's direct statement that she knew it was against prison policy to forward mail from inmate to inmate, coupled with the fact that the Respondent secreted the letter by taping it to the back of the docket entries show[ ] her attempt to circumvent the law. The Respondent's conduct was deceitful in placing the prohibited inmate letter in an envelope that contained a return address identifying the Respondent as an 'Attorney at Law.' ... Mail from an inmate's attorney is designated legal mail and the Respondent knowingly used legal mail to hide contraband. For these reasons, this Court finds that the Respondent violated [MLRPC] 8.4(c).

"[MLRPC] 8.4(d) prohibits conduct that is prejudicial to the administration of justice. Respondent's conduct potentially jeopardized the safety of individuals inside and outside the prison when she decided to pursue a course of conduct infested with deceit and dishonesty. Respondent's attempt to circumvent the prison policy (by assisting an inmate (Bloods gang member) to communicate with another inmate (convicted of a violent crime)) and to gather information concerning other defendants is both disrespectful and a disgrace to courts, as well as, the legal profession as a whole. Respondent violated [MLRPC] 8.4(d).

"The court also finds that as a result of the above discussion of the violations of [MLRPC] 8.4(b), (c) and (d), the Respondent violated [MLRPC] 8.4(a) in that she violated (or attempted) the Maryland Lawyers' Rules of Professional Conduct.[10]

---

10. When an attorney has violated several of the Maryland Lawyers Rules of Professional Conduct, she necessarily violated 8.4(a) of this

### *"POSTAGE STAMPS AS CONTRABAND*

"The Petitioner alleges that Respondent further violated [MLRPC] 8.4(c) by surreptitiously taping postage stamps, which are classified as 'contraband' under MCIH prison policy, to what appeared to be legal documents, i.e. docket entries. Upon review of the evidence and testimony from Sergeant Daniel Colgan, this Court is not convinced that Respondent was aware of the MCIH policy prohibiting postage stamps. No evidence was presented to indicate that such prison policy was made public knowledge (posted or distributed to anyone other than employees), therefore, Respondent cannot be charged with being aware of it at the time she sent the postage stamps. Furthermore, Respondent stated that she had previously sent postage stamps to other inmates/clients in various correctional facilities without a problem. . . . For these reasons, this Court finds that the Respondent's conduct of sending postage stamps to an MCIH inmate, as well as allegedly taping the postage stamps to the back of legal documents, does not violate [MLRPC] 8.4.

"Rule 8.1 (Bar Admission and Disciplinary Matters)

"Upon review of the evidence and assessment of the testimony, this Court is not convinced that the Respondent violated [MLRPC] 8.1. This Court finds that Respondent's responses to the Commission[ ]'s investigator were candid with respect to forwarding the inmate mail to Mr. Gardner. Rule 8.1 prohibits an attorney from making a false statement of material fact in connection with a disciplinary matter; and/or knowingly failing to respond to a lawful demand for information from an admissions or disciplinary authority. Here, Respondent admitted to Commission[ ]'s investigator and Bar Counsel that she knew what she did was wrong. . . . There is no evidence to neither suggest she was non-compliant with the investigation nor mislead the investigator; therefore, this

Rule as well. *Att'y Griev. Comm'n v. Foltz,* 411 Md. 359, 411, 983 A.2d 434, 465 (2009).

Court finds Respondent's conduct did not amount to a Rule 8.1 violation."

The petitioner has taken no exceptions to the hearing court's findings of fact or conclusions of law. It recommends, as the appropriate sanction for the MLRPC 8.4 violations that the court found, that the respondent be disbarred from the practice of law.[11] In support of that recommendation, emphasizing the irresponsibility of the conduct that the hearing court found that the respondent committed, so characterized by the court, in addition to "deceitful," a disgrace" and "less than honorable," and its "potential danger to inmates, staff and even those outside prison," the petitioner asserts that disbarment is consistent with the purpose of attorney discipline to protect the public—it is "commensurate with the nature and gravity of [the respondent's] violations and the intent with which they [were] committed," *Attorney Grievance Comm'n v. Nwadike,* 416 Md. 180, 201, 6 A.3d 287, 299 (2010), citing *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 70–71, 839 A.2d 718, 724 (2003)—and it "set[s] the standard of integrity for members of the legal profession and [demonstrates] the kind of conduct the Court will not tolerate." *Attorney Grievance Comm'n v. Kahn,* 290 Md. 654, 683, 431 A.2d 1336, 1351–52 (1981). As reflective of these principles, the petitioner directs our attention to *Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 812 A.2d 981 (2002), and *In re Garvey,* 325 Or. 34, 932 P.2d 549 (1997), a case we cited with approval in *Sheinbein.* Although the petitioner acknowledges that the conduct engaged in by the respondent in this case was not as "consequential" as the conduct of the attorneys in *Sheinbein* and *Garvey,* it asserts that her actions, which the hearing court found were committed with "an intent to flout the law aimed at the security of prisons," "were so dangerous that the

---

11. Rule 16–758(b), Exceptions; Recommendations, provides:
 "Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c)."

*potential* harm to the public, including physical harm, was manifest."

To be sure, the petitioner conceded that "cases involving attorney violations of prison rules have not always resulted in disbarment" and, indeed, cited some of those cases in its initial recommendation paper, *see In the Matter of Albin,* 267 Kan. 451, 982 P.2d 385 (1999), and in supplements subsequently filed to that paper. *See In the Matter of Wagoner,* 787 N.E.2d 377 (Ind.2003); *In the Matter of Disciplinary Proceedings Against Woodard,* 183 Wis.2d 575, 515 N.W.2d 700 (1994); *In re Fulkerson,* 912 N.E.2d 822 (Ind.2009); *Attorney Grievance Comm'n v. Haupt,* 285 Md. 39, 399 A.2d 1350 (1979). Nevertheless, the petitioner maintains its position that disbarment is the appropriate sanction.

The respondent filed both exceptions and a recommendation as to disposition. She excepted to both the findings of fact and conclusions of law. With regard to the former, the respondent denies that she admitted knowing that letters from inmates in different facilities sent from her office to her client at MCIH would be considered contraband. She maintains that recognizing that "inmates are not allowed to write to one another directly" does not amount to a "recognition, personal knowledge or understanding that *her* transmittal of that material would be considered contraband." For these same reasons, the petitioner excepts to the conclusion of law that she "knowingly sent contraband" to an MCIH inmate in violation of Maryland Code (1957, 2012 Repl.Vol.) § 9–412 of the Criminal Law Article, thus violating MLRPC 8.4(b). The respondent also excepts to the finding that she admitted taping the letters to the docket entries, submitting that "[i]t is in direct contradiction to both her statements in her interview with Bar Counsel's investigator and with her testimony at the June 29, 2010 hearing."

The respondent's exception to the conclusion of law that she "secreted the letter by taping it to the back of docket entries" in order to "circumvent the law and prison policy" is based on the fact that, other than the testimony of Sergeant Colgan, the

petitioner "failed to present any clear and convincing evidence to show the intent, motivation or desire by Respondent to circumvent MCIH policies and procedures."

That she testified that she represented Mr. Gardner in a "potential personal injury claim against MCIH and with respect to his literary works" is the basis for the respondent's exception to the conclusion of law that she used "legal mail to hide contraband in violation of MLRPC 8.4(c)." With regard to the conclusion of law that she pursued a "course of conduct infested with deceit and dishonesty" potentially jeopardizing the safety of individuals in- and out-side the prison in violation of MLRPC 8.4(d), the respondent argues:

"In fact, the evidence in the case shows that the opposite was true since the letters were benign as recognized by Bar Counsel and Respondent in the Joint Stipulation of Fact. Specifically, Stipulation # 7 states that "no criminal activity was indicated in the letters sent to MCIH by Respondent" and Stipulation # 8 states that "no criminal activity resulted from the materials sent by Respondent."

The respondent also submitted a recommendation as to disposition: either a reprimand or a short period of suspension. Her conduct does not warrant disbarment, she says, because it is not the kind of conduct that has been at issue when this Court has ordered disbarment:

"She did not;

"(1) Misappropriate client funds or mishandle a client escrow account;

"(2) Misrepresent facts to a client, colleague or Court regarding a matter;

"(3) Forge another's signature;

"(4) Commit a serious crime;

"(5) Intentionally give a false statement to a client, colleague or Court regarding a matter;

"(6) Commit an act of violence;

"(7) Attempt to practice law in a jurisdiction in which she was not admitted to practice; or

"(8) Personally benefit from her actions."

Moreover, her situation is further distinguished from disbarment cases, she submits, in that she made at most a misrepresentation, rather than engage in fraud or deceit, and she "has never been disciplined in this or any other jurisdiction."

Maryland Rule 16–759(b) provides:

"(1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2)Findings of Fact.

"(A) If No Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) If Exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

Explicating this Rule, we said in *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 27–28, 922 A.2d 554, 569–70, *reinstatement granted,* 400 Md. 97, 928 A.2d 795 (2007):

"Thus, we review de novo the hearing court's conclusions of law. Rule 16–759(b)(1); *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463, 2007 WL 1051696, *4 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675, 2007 WL 816836, *4 (2007); *Attorney Grievance Comm'n v. Hodgson,* 396 Md. 1, 6–7, 912 A.2d 640, 644 (2006); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate decision as to whether an attorney has engaged in professional misconduct rests with this Court). When the factual findings are not clearly erroneous and the conclusions

drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–147, 913 A.2d 1, 8 (2006). Moreover, a hearing court's findings of fact will not be overruled unless we determine that they are clearly erroneous. *Mahone,* 398 Md. at 265, 920 A.2d at 463; *Guida,* 391 Md. at 50, 891 A.2d at 1095. 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.' *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)."

*See also Attorney Grievance Comm'n v. Tanko,* 408 Md. 404, 418–19, 969 A.2d 1010, 1019 (2009); *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008) (noting that, "[a]s to the hearing judge's conclusions of law, such as whether the provisions of the MLRPC were violated, our consideration is essentially de novo"); *Attorney Grievance v. Zuckerman,* 386 Md. 341, 363, 872 A.2d 693, 706 *reinstatement granted sub nom. Attorney Grievance Comm'n v. Zuckerman,* 387 Md. 326, 875 A.2d 132 (2005). Moreover, attorney discipline proceedings are within this Court's original and complete jurisdiction, *Attorney Grievance Comm'n v. James,* 385 Md. 637, 654, 870 A.2d 229, 239 (2005); *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004), and the hearing judge's findings must be supported by clear and convincing evidence. *Attorney Grievance Comm'n v. Gore,* 380 Md. 455, 468, 845 A.2d 1204, 1211 (2004).[12]

---

**12.** It is well settled that this Court has original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Maignan,* 390 Md. 287, 292, 888 A.2d 344, 347 (2005); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994). In such proceedings, we deem the factual findings of the hearing judge to be prima facie correct, and we will not disturb them on review unless they are proven to be clearly erroneous. *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 15, 904 A.2d 477, 486 (2006); *Attorney Grievance Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981). Our review of the hearing

We shall overrule the respondents' exceptions. While, to be sure, the respondent may be correct that there is no direct evidence to establish that the respondent knew that inmate letters to other inmates were contraband, the hearing court could, as it did, infer that knowledge from her statement that she knew that inmates were not allowed to correspond directly. Moreover, the hearing court was entitled to consider the manner in which the letters were delivered in making that inference. In that regard, it could have, as it did, credit the testimony of Sergeant Colgan, on that point.

Whether the respondent admitted taping the letters to the docket entries, the testimony of Sergeant Colgan that he found the letters taped to the docket entries provided sufficient support for both the finding made by the hearing judge and the conclusion she drew from that fact. Similarly with regard to the conclusions of law relating to the nature and impact of her "course of conduct" and that the respondent hid contraband using legal mail, that there were inmate-to-inmate letters contained in the respondent's correspondence to an inmate, whether client or not, the manner in which those letters were transmitted and the respondent's statements with respect to them, that, for example, she used poor judgment in agreeing to transmit the letters, form the factual predicate for, and support, those conclusions. To be sure, the letters proved to be benign and the parties stipulated that there was no criminal activity indicated. That, however, does not undermine or negate the "potential danger" inherent in such a course of conduct in which the respondent engaged.

That leaves for resolution the determination of the appropriate sanction. We approach this task fully cognizant that the purpose, the goal, of attorney discipline is well settled, "to protect the public, not to punish the erring attor-

---

judge's legal conclusions, however, is *de novo*. Maryland Rule 16–759(b). Thus, "[a]ny conclusions of law made by the hearing judge, such as whether provisions of the MLRPC were violated, are subject to our *de novo* review." *Attorney Grievance Comm'n v. O'Toole*, 379 Md. 595, 604, 843 A.2d 50, 55 (2004) (citing *Attorney Grievance Comm'n v. McLaughlin*, 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002)).

ney." *Goff,* 399 Md. at 30, 922 A.2d at 571. *See Mba–Jonas,* 397 Md. at 703, 919 A.2d at 677; *Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006). This purpose and goal are achieved "when the sanctions are commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 375 (2003). We approach each matter on its own merits, focusing on, and considering, the facts and circumstances involved, *Attorney Grievance Comm'n v. Gisriel,* 409 Md. 331, 385, 974 A.2d 331, 362 (2009); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 300, 614 A.2d 102, 114 (1992); *Attorney Grievance Comm'n v. Kemp,* 303 Md. 664, 680, 496 A.2d 672, 680 (1985), including any mitigating factors, *see Attorney Grievance v. Atkinson,* 357 Md. 646, 656, 745 A.2d 1086, 1092 (2000); *Attorney Grievance v. Gavin,* 350 Md. 176, 197–98, 711 A.2d 193, 204 (1998), and with an eye toward the promotion of general and specific deterrence, *Attorney Grievance Comm'n v. Sliffman,* 330 Md. 515, 529, 625 A.2d 314, 321 (1993); the protection of the integrity of the legal profession, *Attorney Grievance Comm'n v. Cassidy,* 362 Md. 689, 698, 766 A.2d 632, 637 (2001); and furthering the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Christopher,* 383 Md. 624, 639, 861 A.2d 692, 701 (2004); *Stein,* 373 Md. at 537, 819 A.2d at 375; *Powell,* 369 Md. at 474, 800 A.2d at 789. We have also made clear that "[t]he severity of the sanction to be applied is measured by the egregiousness of the misconduct under the particular facts and circumstances of the case." *Gisriel,* 409 Md. at 385–86, 974 A.2d at 363, citing *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 165, 567 A.2d 112, 117 (1989) ("[T]he extent of the discipline to be applied is generally dependent upon the severity of the misconduct and the particular facts and circumstances surrounding it."). Other relevant considerations are "the attorney's prior grievance history[,] . . . the attorney's remorse for the misconduct, and the likelihood of the conduct being repeated." *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 71, 839 A.2d 718, 724–25 (2003).

At the outset, we are clear, the respondent's misconduct is quite serious. Indeed, the course of conduct in which she engaged had the potentiality, as the hearing court found, of "jeopardiz[ing] the safety of individuals inside and outside of the prison." Moreover, it included engaging in a criminal act that undermines her trustworthiness and fitness to practice law. Therefore, we reject the respondent's recommendation that she be reprimanded only. On the other hand, as bad as the respondent's misconduct is, it does not rise to the level of the misconduct in the cases on which the petitioner relies for its disbarment recommendation. In *Sheinbein*, as the petitioner acknowledges, the sanctioned attorney actively assisted his son, a murder suspect, to flee this country to Israel, where there is no extradition treaty, to avoid prosecution here. 372 Md. at 260, 812 A.2d at 1002. In *Garvey*, the misconduct consisted of, *inter alia*, the criminal acts of bringing his client, an inmate, money for his escape from jail and later lying about those facts, 932 P.2d at 551, which the Oregon Supreme Court concluded caused actual and substantial harm to the public and the legal system. *Id.* at 552–53. Accordingly, we also reject the petitioner's disbarment recommendation.

As indicated, the petitioner candidly acknowledges that "cases involving attorney violations of prison rules have not always resulted in disbarment in other jurisdictions." Indeed, a Maryland case is illustrative. In *Haupt*, when visiting his client at the jail where he was incarcerated, the attorney represented to jail personnel that the woman with him was his assistant, when she was, in fact, the client's fiancee. 285 Md. at 41, 399 A.2d at 1352. In so doing, he obtained her admission to a secure area to which she would not otherwise have been admitted. *Id.* The attorney, who had a prior disciplinary matter, was sanctioned with a 90 day suspension. *Id.* at 40, 399 A.2d at 1351. In *Albin*, the attorney was given a public censure after having been found to have violated the Kansas version of Rule 8.4(c) by sending an inmate personal mail, whose nature he attempted to conceal by including the subject line, "Re: Representation on car accident," and marking the envelope, "legal mail," and on two occasions including

contraband, stamps or stamped envelopes. 982 P.2d at 386. The attorney in *Wagoner* supplied her client, who was incarcerated, with a cellular phone. 787 N.E.2d at 377–378. That was one of the charged violations in her disciplinary case. *Id.* In addition, she was charged with failing to follow instructions with regard to funds entrusted to her to pay for her client's representation, specifically giving half of the funds to a friend of the client. *Id.* Her sanction: a 180 day suspension, the first 90 of which was to be served as an "executed suspension", with the remainder stayed while the attorney completed two years probation. *Id. Fulkerson* is similar to *Haupt.* In that case, the attorney gained admission to a secure area of the prison facility for a girlfriend of one of the inmates by representing to the authorities that she was her private investigator. *Fulkerson,* 912 N.E.2d 822–23. Despite there being other violations found and the attorney's lack of remorse or admission of the seriousness of the charges, the sanction imposed was the equivalent, in Maryland, of an indefinite suspension, with the right to apply for readmission after one year. *Id.* at 823–24. The respondent in *Woodard* was suspended for three years. 515 N.W.2d 700. His violations included delivering to his client, on two occasions and without inspecting them or advising jail personnel that he was doing so, sealed packages from his client's girlfriend, even though he knew that she was on probation for harboring and aiding the client and that a condition of that probation was that she have no direct contact with the client. *Id.* at 703. One of the packages contained hacksaw blades. *Id.* The attorney previously had been reprimanded, twice, and suspended. *Id.* at 701.

The respondent's misconduct in this case is more analogous to that sanctioned in *Woodard.* In both cases, the attorney facilitated, indeed insured, communications, between the inmate and another person that the prison regulations prohibited. They both facilitated those communications with knowledge of their prohibition. In both cases, the attorneys brought contraband into the facility and did not notify the authorities that they were doing so. Moreover, neither of them checked

the contents of the contraband, the letters in the case of the respondent and the sealed package, uninspected, in the case of *Woodard.* And their course of conduct in bringing the contraband into the facility was such as to create a risk or potentiality of harm, not only to inmates, but as the hearing court determined in this case, to individuals outside the institution, as well.

We believe, however, that the conduct in *Woodard* is more egregious. Woodward knew that the client's girlfriend had harbored and aided him in the criminal conduct that caused his incarceration, yet he facilitated communications between the client and his girlfriend. *Id.* at 703–04. He did so, as well, fully aware of the restrictions that the girlfriend's probation placed on her communications with his client. *Id.* More importantly, his failure to check the packages he was delivering permitted the client to receive hacksaw blades, which could be used to effect his escape.

The sanction in *Woodard,* as we have seen, was a three year suspension. *See id.* at 700. It is significant that, in that case, the attorney had an extensive disciplinary history, two prior reprimands and a prior suspension. *See id.* at 701. The respondent, on the other hand, has no prior disciplinary history. As important, the situation remained simply a potentiality for adverse consequences. Under these circumstances, considering the purpose of the discipline and the facts and circumstances of this case, we think the appropriate sanction is a one year suspension, effective thirty days from the date of this opinion.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–671(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST SHERRIE T. HOWELL.*